**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SAMIRA SANGARÉ,

                Plaintiff,

        v.

CITY OF ALBANY, et al.,

                Defendants.

1:24-CV-555
(DNH/PJE)

---

**APPEARANCES:**

Samira Sangaré
7 Cold Springs Drive
Clifton Park, New York 12065
Plaintiff pro se

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

Presently before the undersigned is a review of plaintiff Samira Sangaré's Amended Complaint pursuant to 28 U.S.C. §§ 1915, 1915A.  *See* Dkt. No. 5 ("Am. Compl.").[1]  Plaintiff seeks to bring her complaint against the City of Albany; Kathy Sheehan, Mayor of Albany; Eric Hawkins, Former City of Albany Police Department Chief of Police; Anthony DiGiuseppe, Sergeant, Albany Police Department; PJ O'Donovan, Detective,  City of Albany Police Department; and City of Albany Police Officers John Does.  *See id.* at 6.[2]

---

[1]  The Court's citations to the Amended Complaint refer to the pagination from Court's electronic filing system, located at the header of each page, not to the document's original pagination.
[2] Familiarity with the procedural history of this case is presumed.  *See generally* Docket.

I. **Legal Standards**

28 U.S.C. § 1915 directs that when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).  Further, the court must dismiss the action if it "determines at any time that it lacks subject matter jurisdiction."  FED. R. CIV. P. 12(h)(3).  Thus, when a plaintiff proceeds IFP, "it is a court's responsibility to determine that a plaintiff may properly maintain [a] complaint before permitting [the action] to proceed[.]"  *Praileau v. Fischer*, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

The Second Circuit directs that courts must grant pro se plaintiffs "special solicitude," construe their submissions "liberally," and read such submissions "to raise the strongest arguments that they suggest."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted) (citing *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)).  The rationale for this is because "a *pro se* litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if [] not afforded some degree of protection."  *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (citing *Triestman*, 470 F.3d at 475).

However, courts "cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations[,] or arguments that the submissions themselves do not suggest."  *Triestman*, 470 F.3d at 477 (citations omitted).  Further, the "special solicitude" standard does not excuse "frivolous or vexatious filings by *pro se* litigants," nor does it "exempt a party from compliance with relevant rules of procedural

2

and substantive law." *Id.*; *see also Jones v. Westchester Cnty.*, 182 F. Supp. 3d 134, 147 (S.D.N.Y. 2016) (reminding that the "special solicitude afforded to *pro se* civil rights litigants does not give them license to violate the Federal Rules of Civil Procedure[.]") (citations omitted).

Under Rule 8, a complaint shall contain "(1) a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). In deciding whether a complaint states a claim, a "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Dallio v. Hebert*, 678 F. Supp. 2d 35, 54 (N.D.N.Y. 2009) (quoting *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)). However, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Burrell v. DOCCS*, 655 F. Supp. 3d 112, 121 (N.D.N.Y. 2023) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)); *see also Spinner Consulting LLC v. Stone Point Cap. LLC*, 623 B.R. 671, 675 (D. Conn. 2020) (noting that while "detailed allegations are not required . . . , conclusory assertions are insufficient), *aff'd*, 843 F.

3

App'x 411 (2d Cir. 2021).  A complaint that fails to comply with these pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense[,] and provides no meaningful basis for the Court to assess the sufficiency of their claims."  *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

## II. **Plaintiff's Amended Complaint**

Plaintiff provides that on April 14, 2021, while marching "to protest the murder of Daunte Wright and the ongoing violence against Black Americans by the police," Albany Police Department officers sprayed plaintiff multiple times with a chemical agent and "physically pushed" her off of the ramp leading to the entrance of APD's South Station, "using both their hands and billy clubs."  Am Compl. at 7.  Plaintiff explains that she participated in "set[ting] up a peaceful encampment outside South Station" as "a demonstration of solidarity and a call for accountability."  *Id.*

On April 22, 2021, plaintiff was at the encampment, "standing still, not moving and recording the police action, when multiple officers, with their badges and name tags covered, shoved me to the ground using riot shields."  Am. Compl. at 7.   Plaintiff did not resist but officers still "chose to violently shove [her] to the ground instead of employing less forceful means."  *Id.*  As a result of this encounter, her "phone was knocked from my hand by an officer, and [she] was dragged approximately ten feet by one leg by two officers including Sergeant DiGuiseppe."  *Id.*  Plaintiff was "forcibly flip[ped] onto [her] stomach and "at least two officers drove their knees into [her] back pinning [her] to the ground as they carried out [her] arrest."  *Id.*  Despite not moving, the officers "repeatedly screamed for [her] to 'stop resisting."  *Id.*  While on the ground, "officers lifted [her] from behind in a painful and unsafe manner – one officer grabbed [her] lower arm while

4

another grabbed [her] upper arm, twisting [her] body unnaturally as they pulled [her] up." *Id.* Plaintiff contends that the above-described conduct was excessive force and was unreasonable and unnecessary. *Id.* She "do[es] not know which of these officers was detective PJ O'Donovan, but he signed by appearance ticket, and I believe he may have been involved in my arrest." *Id.* Plaintiff provides she does not know the names of the officers involved because they covered their nametags and badge numbers. *See id.* at 8.

Plaintiff was arrested and charged with disorderly conduct. *See* Am. Compl. at 8. She contends that, at the time of her arrest, she was "peacefully protesting and exercising my constitutional right to free speech[,]" and that her arrest was "motivated by an intent to suppress protected speech, in violation of the First Amendment." *Id.* Plaintiff contends that Sergeant DiGiuseppe made comments "during the investigation into the arrests" which "demonstrate a retaliatory motive based on my participation in protests against police violence, despite the fact that I was not a member of Black Lives Matter at the time of my arrest." *Id.*

Plaintiff argues that she was subjected to discriminatory treatment in violation of the Equal Protection Clause of the Fourteenth Amendment because "[t]he excessive force used against me and the comments made by Sergeant Anthony DiGiuseppe reflect not only a general bias but a specific racial bias." Am. Compl. at 9. Plaintiff contends that "[b]lack individuals, including myself, were disproportionately treated as inherently violent or dangerous," as supported by DiGuiseppe's alleged statements regarding Black Lives Matters protesters. *Id.* "The systemic failure to address racial discrimination within the Albany Police Department is part of a broader pattern of

5

unequal treatment." *Id.* Plaintiff contends that the defendants' conduct of covering their names and badge numbers "enabled this racial discrimination to go unchecked" and deprived her ability to "seek accountability[.]" *Id.* at 10. She contends she "was subjected to disparate treatment compared to non-Black individuals and individuals who were not engaged in protests against police violence." *Id.* She contends that the "retaliatory nature of [her] arrest—informed by Sergeant DiGiuseppe's anti-BLM bias—suggests racial discrimination as a motivating factor." *Id.*

Plaintiff contends that the City of Albany, Mayor Kathy Sheehan, and former City of Albany Police Chief Eric Hawkins are liable for the police officers' conduct under *Monell* because they "failed to adequately train officers in handling peaceful civil disobedience." Am. Compl. at 10-11. She refers to Sheehan's "inflammatory comparison of peaceful protestors to the January 6[th] insurrectionists" and "Chief Hawkins' vague and unsupported claims of a regional safety threat, further incited hostility toward protesters." *Id.* at 11. Plaintiff argues that Sheehan and Hawkins' "inaction and poor leadership created conditions that escalated tensions and led to the violations described above." *Id.* She contends that "failure to implement a proper system for tracking and securing property during my arrest demonstrates systemic neglect." *Id.* Plaintiff also contends that she was told she could return the next day to retrieve her cell phone, but that when she did, she was told it was not in police custody, which is "a clear deprivation of my property without due process of law." *Id.*

Plaintiff contends, "[d]espite the Albany Community Police Review Board's investigation into these events," Hawkins and Sheehan "failed to hold officers accountable or ensure cooperation with independent investigators" which is a "willful

6

disregard of oversight and accountability" that "violates the Equal Protection Clause of the Fourteenth Amendment, as it denied [her] and others arrested the ability to seek meaningful remedies under the law." Am. Compl. at 11.

Plaintiff seeks "compensatory and punitive damages, along with injunctive relief" for her First and Fourth Amendment claims, "compensatory damages and policy reforms to prevent racial discrimination in Albany Police Department practices" for her Fourteenth Amendment Equal Protection claim, and "compensatory damages, injunctive relief, and policy reforms" for her *Monell* claims." Am. Compl. at 13-16.  More specifically, she demands $1,000,000 in compensatory damages, punitive damages in an amount to be determined at trial, a declaration that defendants violated her First, Fourth, and Fourteenth Amendment rights.  *See id.* at 17.  She seeks "an injunction requiring the City of Albany and the Albany Police Department to: [] Implement and enforce policies to prevent excessive force during protests, [] Prohibit the concealment of badge numbers and name tags by officers, [] Establish mandatory training on constitutional rights, free speech protections, and anti-bias practices."  *Id.* at 18.

### III.  Discussion

### A. Fourth Amendment Excessive Force

For the reasons set forth in the January 2, 2025, Report-Recommendation & Order, dkt. no. 4, which the District Judge adopted, dkt. no. 6, plaintiff's Fourth Amendment claims as realleged in the Amended Complaint should be permitted to proceed to the extent these claims are alleged against the individual officers in their individual capacities.[3]

---

[3] To the extent plaintiff refers to defendant police officers collective conduct or contends that she is not sure whether the named officer was the one involved or not, the Court acknowledges that plaintiff has

B. **First Amendment**

Liberally read and with due solicitude, plaintiff's amended complaint raises two claims under the First Amendment: (1) retaliatory arrest, and (2) "unlawful suppression of free speech and assembly." Am. Compl. at 8.

1. **Retaliatory Arrest**

Plaintiff's claim for retaliatory arrest must be dismissed as pled. Plaintiff provides that she was arrested for disorderly conduct; however, she has not indicated the result of the arrest. "'A person is guilty of disorderly conduct under New York law when [s]he (among other things) makes unreasonable noise; uses abusive or obscene language in a public place; or congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." *Chavez v. Finney*, No. 19-CV-4109 (RA), 2022 WL 874716, at *6 (S.D.N.Y. Mar. 23, 2022) (quoting N.Y. Penal L. § 240.20) (additional internal quotation marks omitted). "[T]he plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). If plaintiff pled guilty to a charge of disorderly conduct or was found guilty, her claim for retaliation in violation of the First Amendment could not proceed. *See, e.g., Marom v. City of New York*, No. 15-CV-2017 (PKC), 2016

---

limits that may be resolved by discovery once this claim proceeds. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) (noting personal involvement is a prerequisite to an award of damages under section 1983)); *see also Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) (holding that in order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered."). Plaintiff is advised that she is required to establish each defendant's specific personal involvement in the alleged misconduct. She is further advised, as she was in the January 2025 Report-Recommendation & Order, that the Court cannot serve John Doe defendants and that she will have to take reasonable efforts to identify the Doe defendants and timely amend her complaint to identify the Doe defendants and explain *each* defendants' *specific* conduct and not refer to defendants' conduct collectively. *See Moore v. Westchester Cnty.*, No. 18-CV-7782, 2019 WL 3889859, at *5 (S.D.N.Y. Aug. 19, 2019) ("[N]onspecific allegations that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.").

WL 916424, at *10 (S.D.N.Y. Mar. 7, 2016), *on reconsideration in part*, No. 15-CV-2017 (PKC), 2016 WL 5900217 (S.D.N.Y. July 29, 2016) ("Because 'a conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause,' *Cameron* [*v. Fogarty*]*, 806 F.2d* [380] *at 387* [(2d Cir. 1986)], Fitzgerald's First Amendment retaliation claim will be dismissed at this stage."); *Aho v. Chitteck*, No.3:09-cv-728(CFD), 2011 WL 2709836, at *4 (D.Conn. July 12, 2011) ("[W]hen probable cause to arrest exists, police may arrest an individual even if the arrest could limit the exercise of that individual's First Amendment rights.").  As the undersigned does not have sufficient information on this claim, it fails under Rule 8.  Out of special solicitude to plaintiff's pro se status, however, it is recommended that plaintiff be given a final opportunity to amend to advise the Court of the status of the disorderly conduct charge – whether she pled or was adjudicated guilty, the charge was dismissed, or otherwise.

### 2. **Free Speech**

Liberally read, plaintiff contends that defendant officers violated her First Amendment right of free speech by preventing her from recording the police conduct. *See* Am. Compl. at 14.

> "The Free Speech Clause of the First Amendment constrains governmental actors and protects private actors." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804, 139 S.Ct. 1921, 204 L.Ed.2d 405 (2019). While the First Amendment "guarantees freedom of speech," it "'does not guarantee the right to communicate . . . at all times and places or in any manner that may be desired.'" *Kass v. City of New York*, 864 F.3d 200, 207 (2d Cir. 2017) (quoting *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981)). "A private citizen asserting a First Amendment claim against a public official must establish that: '(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury.'" *Hoefer v. Bd. of Educ. of the Enlarged City Sch. Dist. of Middletown*, No. 10

9

Civ. 3244 (ER), 2017 WL 2462660, at *4 (S.D.N.Y. June 6, 2017) (quoting *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013)).

*Chinese Am. Citizens All. Greater New York v. New York City Dep't of Educ.*, 802 F. Supp. 3d 483, 513 (S.D.N.Y. 2025).

"To establish a First Amendment free speech violation, a plaintiff must show, in part, 'defendants' actions effectively chilled the exercise of his First Amendment right.'" *Siracusa v. New Hyde Park-Garden City Union Free Sch. Dist.*, No. 24-CV-01002 (NCM) (LGD), 2024 WL 3875793, at *10 (E.D.N.Y. Aug. 19, 2024) (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). "However, '[t]he type of allegations necessary to satisfy the injury element of a First Amendment retaliation claim vary depending on the factual context.'" *Boehner v. City of Rochester*, 609 F. Supp. 3d 220, 230 (W.D.N.Y. 2022) (quoting *Morales v. Valley Stream Union Free Sch. Dist. 24*, 527 F. Supp. 3d 470, 474 (E.D.N.Y. 2021)). "As a result, '[c]hilled speech is not the *sine qua non* of a First Amendment claim. A plaintiff has standing if he can show either that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm.'" *Id.* (quoting *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160, (2d Cir. 2013)); *Norton v. Town of Brookhaven*, 47 F.Supp.3d at 156 ("[A] criminal prosecution is a sufficient form of concrete harm for purposes of a First Amendment retaliation claim."). "If both proper and improper motivations were behind defendants' conduct, the action may be upheld if it would have been taken based on proper reasons alone*." Lozada v. Weilminster*, 92 F. Supp. 3d 76, 99 (E.D.N.Y. 2015) (citing *Santulli v. Russello*, 519 F.Appx. 706, 709 (2d Cir. 2013)).

Plaintiff refers to recording police action outside of the police station, while present at a "peaceful encampment" intended to serve as a "demonstration of solidarity" and "call for accountability" and to "protest the continued violence by APD against Black citizens and the broader systemic racial injustice perpetuated by law enforcement." Am. Compl. at 7.

"Although the Second Circuit has not yet weighed in on whether recording the police is protected First Amendment activity,"[4] the Southern District of New York concluded that "recording police performing their official duties in public is protected under the First Amendment." *Reyes v. City of New York*, No. 23-CV-6369 (JGLC), 2023 WL 7212192, at *5 (S.D.N.Y. Nov. 2, 2023) (citing cases and recognizing that "other circuits have uniformly recognized a First Amendment right to record the police performing their duties in public.").[5] "Even the courts that have recognized this right have made clear that the right to videotape is 'not without limitations' and 'may be subject to reasonable time, place, and manner restrictions.'" *Leibovitz v. City of New York*, No. 14-CV-7106(KAM)(LB), 2018 WL 1157872, at *8 (E.D.N.Y. Mar. 2, 2018) (quoting *Glik v. Cunniffe*, 655 F.2d 78, 84 (1st Cir. 2011)). However, the Court need not decide this question yet.

As with the retaliatory arrest claim above, the Amended Complaint does not provide the Court with sufficient information to assess her free speech claim. Plaintiff appears to claim that she was arrested and force was used against her as a means of

---

[4] Plaintiff cites a First Circuit case to support her argument that recording police conduct is protected speech. *See* Am. Compl. at 14. The undersigned observes that cases from the First Circuit are not precedential and not binding on this Court.
[5] *See Camreta v. Greene*, 563 U.S. 692, 709 n.7, (2011) (holding that a "decision of a federal district court judge is not binding precedent").

preventing her from filming police activity or participating in the encampment.  *See* Am. Compl. at 14.  However, if plaintiff pleaded guilty or was adjudicated to have committed disorderly conduct,[6] her claim that defendants interfered with her free speech rights would be defeated because plaintiff would be unable to demonstrate that officers "knocked the phone out of her hand" because of her speech – a potentially "improper reason" – rather than due to her engaging in disorderly conduct – a potentially "proper reason."  *Leibovitz*, 2018 WL 1157872, at *7 (quoting *Rattner v. Netburn*, 930 F.2d 204, 208 (2d Cir. 1991) ("To recover on a First Amendment claim under [section] 1983, a plaintiff must demonstrate that his conduct is deserving of First Amendment protection and that the defendants' conduct of harassment was motivated by or substantially caused by his exercise of free speech.")); *see also id.* at *8 ("'[T]he right [to record police officers in public] does not apply when the recording would impede police officers in the performance of their duties.'") (quoting *Higginbotham v. City of New York*, 105 F. Supp. 3d 369,379-80 (S.D.N.Y. 2015)); *Graham*, 89 F.3d at 79.

### 3.  Right of Peaceable Assembly

Plaintiff contends that defendants interfered with her right of assembly insofar as she was prevented from being able to continue to participate in the encampment and/or protest.

---

[6] New York Penal Law § 240.20 provides, in pertinent part:
> A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: . . . (2) He makes unreasonable noise; or ... (6) He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse . . . .

The First Amendment "guarantees 'the right of the people to peaceably assemble.'" *Foote v. Bd. of Educ. of Whitehall Cent. Sch. Dist.*, No. 1:22-CV-0815 (GTS/CFH), 2024 WL 3376651, at *17 (N.D.N.Y. July 11, 2024) (quoting *Johnson v. Perry*, 859 F.3d 156, 171 (2d Cir. 2017) (quoting U.S. CONST. AMEND. I.)); *see Hansen v. Town of Smithtown*, 342 F. Supp. 3d 275, 288 (E.D.N.Y. 2018) (quoting *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937) ("'The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental.'"). "[C]ourts have long held that the constitutional right to assembly—like the right to free speech—is not absolute." *Amato v. Elicker*, 460 F. Supp. 3d 202, 219 (D. Conn. 2020) (citing *Parmley*, 465 F.3d at 56). "Generally, government officials may stop or disperse public demonstrations or protests where clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears." *Foote*, 2024 WL 3376651, at *17 (quoting *Johnson*, 859 F.3d at 171) (quoting *Papineau v. Parmley*, 465 F.3d 46, 56-57 (2d Cir. 2006) (internal quotation marks omitted)). "The First and Fourteenth Amendments do not permit [the government] to make criminal the exercise of the right of assembly simply because its exercise may be 'annoying' to some people." *Frierson v. Reinisch*, No. 1:17-CV-44 (MAD/CFH), 2021 WL 4405911, at *3 (N.D.N.Y. Sept. 27, 2021), *aff'd sub nom*. *Frierson v. Troy City Sch. Dist.*, No. 21-2555-CV, 2023 WL 4441980 (2d Cir. July 11, 2023) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 615 (1971)). "On the other hand, [n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by

the speaker's activities." *Id.* (quoting *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 799-800 (1985) (internal quotation marks omitted))); *see also Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 101 (S.D.N.Y. 2016) (holding that there is no First Amendment violation when the government "regulates by reasonable, appropriate and non-discriminatory measures the time, place and manner of use of the streets for public assemblies . . . .") (quoting *People v. Pearl*, 321 N.Y.S.2d 986, 988 (N.Y. App. Div. 1971) (per curiam)).   "'[T]he level of judicial scrutiny that must be applied to state actions inhibiting speech varies with the nature of the forum in which the speech occurs, and the same analytical framework applies whether the First Amendment right being exercised is speech . . . or other expressive activity such as assembly.'" *Butler v. City of New York*, 559 F. Supp. 3d 253, 267 (S.D.N.Y. 2021) (citing *Johnson v. Perry*, 859 F.3d 156, 171 (2d Cir. 2017)); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983) ("The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue.").

> "Where there is no clear and present danger, 'speech restrictions imposed on persons on government-owned property are analyzed under a 'forum-based' approach that divides government property into three principal categories—the traditional public forum, the designated public forum, and the nonpublic forum,' along with 'a subset of the designated public forum,' referred to as the 'limited public forum[.]'" *Id.* (quoting *Byrne v. Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010)) (cleaned up).

*Doe v. Salina*, No. 23-CV-3529 (JMW), 2024 WL 5077629, at *17 (E.D.N.Y. Dec. 11, 2024); *see also Minnesota Voters Alliance v. Mansky*, 585 U.S. 1, 11 (2018).

> In both traditional public forums, e.g., parks, streets, sidewalks, and the like, and designated public forums, i.e., "spaces that have not traditionally been regarded as a public forum but which the government has intentionally opened up for that purpose[,]" . . . the government may

14

impose reasonable time, place, and manner restrictions on private speech, but restrictions based on content must satisfy strict scrutiny, and those based on viewpoint are prohibited."

*Madden v. Town of Hempstead*, 16-CV-6835 (SJF)(AKT), 2019 WL 1439935, at *13 (E.D.N.Y. Mar. 29, 2019) (quoting *Mansky*, 585 U.S. at 11)). "'Accordingly, the initial task of a court faced with a dispute regarding First Amendment activity on government property is to define the nature of the property at issue.'" *Id.* (quoting *Zalaski v. City of Bridgeport Police Dept.*, 613 F.3d 336 (2d Cir. 2010)).

Plaintiff appears to contend that defendant police officers interfered with her ability to continue participating in the encampment or protests – by arresting her – because the encampment was protesting police misconduct. Plaintiff asserts that the encampment was peaceful and suggests that she was not behaving in a threatening manner. *See* Am. Compl. at 7, 13.

Here, plaintiff's claim for the right of peaceable assembly is intertwined with her retaliatory arrest. Indeed, she contends that she was not able to continue protesting because defendants arrested her due to her speech. This claim, as pled, appears duplicative of her retaliatory arrest claim. However, even if it is not, the undersigned finds it necessary to know whether plaintiff pled guilty to disorderly conduct, whether she was adjudicated guilty of disorderly conduct or if the charge was dismissed. Indeed, if it is the case that plaintiff pled guilty or was adjudicated guilty of this conduct, she would not be able to plausibly claim that defendants stopped her from protesting or participating in the encampment because of her protected speech rather than due to her conduct. *See* Am. Compl. at 14.

15

Accordingly, insofar as plaintiff's amended complaint raises a First Amendment peaceable assembly claim, it is recommended that such claim be dismissed without prejudice and with opportunity to amend.

## C. **Fourteenth Amendment Equal Protection**

Plaintiff alleges that she, as a Black individual, "was treated differently from similarly situated non-black individuals and non-protesters[.]" Am. Compl. at 15. However, plaintiff's apparent selective enforcement claim is insufficient and conclusory. To prevail on a selective enforcement claim, "a plaintiff must prove that '(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.'" *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)). To be "similarly situated" under the first step of the analysis, "the plaintiff's and comparator's circumstances must bear a reasonably close resemblance." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (internal quotation marks omitted). However, they need not be "identical." *Id.*  A plaintiff must show that "she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." *Graham v. Long Island Rail Road*, 230 F.3d 34, 39 (2d Cir. 2000) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir.1997)).

Plaintiff's amended complaint lacks any explanation as to how she was treated differently from similarly-situated individuals. Plaintiff does not demonstrate that she was similarly-situated to (1) "non-black individuals," or (2) "non-protesters."  For example,

16

she does not allege that non-Black protestors engaging in the same conduct as plaintiff were treated differently than her.  She also does not allege that she is similarly situated to non-protestors as non-protesters, by virtue of the fact that they were not protesting, cannot be said to be similarly situated to plaintiff. She refers to DiGiuseppe's comments[7] where he appears to make general statements that plaintiff contends were aimed at Black Lives Matters protestors, Am Compl. at 15, but such comments do not demonstrate that plaintiff was treated differently from similarly-situated individuals due to her membership in a protected class.

Plaintiff states that Sheehan and Hawkins "failed to hold officers accountable or ensure cooperation with independent investigators," specifically the Albany Community Police Review Board, which she contends is a "willful disregard of oversight and accountability" that "violates the Equal Protection Clause of the Fourteenth Amendment because it "denied [her] and others arrested the ability to seek meaningful remedies under the law."  Am. Compl. at 11.  Here, too, plaintiff fails to explain how Sheehan and Hawkins' failure to cooperate with the Albany Community Police Review Board (1) amounted to her being treated differently than similarly-situated individuals, or (2) prevented her from being able to seek "meaningful remedies under the law."  *Id.* Firstly, as for being able to seek remedies under the law, plaintiff is pursuing this civil rights lawsuit, which cuts against this claim.  Secondly, even if Sheehan and Hawkins' alleged refusal to cooperate with the Albany Community Police Review Board somehow prevented plaintiff from being able to seek certain "meaningful remedies under the law,"

---

[7]  Plaintiff does not cite the source of these comments.  She does not specify when these comments were made and in what context.  It is unclear whether these comments refer to the protest in which plaintiff was involved.

17

plaintiff does not explain how this inability is a violation of the Equal Protection clause. *Id.*

Accordingly, despite already affording plaintiff an opportunity to amend on her Fourteenth Amendment Equal Protection claim, she has not cured its defects. Therefore, it is recommended that plaintiff's Fourteenth Amendment equal protection claim be dismissed for failure to state a claim with one final opportunity to amend.

### D. **Fourteenth Amendment Deprivation of Property**

Plaintiff contends that her cell phone was knocked out of her hand during her arrest, that she was told she could come to the station to collect her property the next day, and that when she returned, she was told that her phone was not in police custody. Am. Compl. at 11. Plaintiff, therefore, contends that she was deprived of her property without due process. Plaintiff has not demonstrated the inadequacy of a state post-deprivation remedy. As with the original complaint, in the Amended Complaint, plaintiff does *not* demonstrate that her property was lost due to "adherence to an established state or municipal policy." *Grytsyk v. Morales*, 527 F. Supp. 3d 639, 655 (S.D.N.Y. 2021) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999) ("[T]he availability of post-deprivation remedies [will] not defeat a § 1983 claim where the alleged loss results from adherence to an established state or municipal policy.")). In fact, she alleges the opposite, asserting that her phone was lost due to the absence of an established policy. *See* Am. Compl. at 11. ("failure to implement a proper system for tracking and securing property during my arrest demonstrates systemic neglect.").

"Because New York provides an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, or conversion," and plaintiff has not

18

shown that her phone was lost due to adherence to an established municipal policy, it is recommended that her Fourteenth Amendment deprivation of property without due process claim be dismissed.  *See* Dkt. No. 4 at 15 (citing *Dove v. City of New York*, No. 99-cv-3020 (DC), 2000 WL 342682, at *3 (S.D.N.Y. Mar. 30, 2000)); *see also Grytsyk*, 527 F. Supp. 3d at 655.[8]

Accordingly, as there exists an adequate state post-deprivation remedy for plaintiff's lost phone and plaintiff has again failed to demonstrate that her property was lost due to the failure to adhere to an established municipal or state policy, it is recommended that plaintiff's Fourteenth Amendment deprivation of property claim be dismissed for failure to state a claim upon which relief can be granted and without opportunity to amend.

### E. *Monell* Claims

Plaintiff names the City of Albany, City of Albany Mayor Kathy Sheehan,[9] and former City of Albany  Police Chief Eric Hawkins as liable for the police officers' alleged unconstitutional conduct based on the alleged failure to train and/or supervise the officers.[10]  As noted, plaintiff contends that Sheehan and Hawkins failed to adequately train officers "in handling civil disobedience" and that their "inaction and poor leadership created conditions that escalated tensions and led to the violations described above."  Am. Compl. at 11.  In the causes of action section of her amended complaint, plaintiff contends that Sheehan and Hawkins failed to "adequately train and supervise officers"

---

[8] The Court already provided plaintiff with a copy of this unpublished case when it served her with the January 2, 20205, Report-Recommendation & Order. *See* Dkt. No. 4-1.

[9]  Although not specified, because plaintiff discusses this in the *Monell* section of her Amended complaint, it appears plaintiff is raising these claims against Sheehan and Hawkins in their official capacities.

[10] *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (explaining that *Monell* "extends liability to a municipal organization," and does not create a separate cause of action).

19

on the "proper handling of peaceful protests," "limits on the use of force," and "Constitutional protections under the First and Fourth Amendments." *Id.* at 16. She further contends that Sheehan and Hawkins' "failure to discipline officers for using excessive force, covering their badges, and targeting Black protestors demonstrates a willful disregard for constitutional rights." *Id.* Plaintiff contends that Sheehan's and Hawkins' statements about "peaceful protestors" "further incited hostility toward protestors." *Id.* at 11. She contends further that Hawkins "authoriz[ed] officers" to cover their name tags and "failure to ensure that officers complied with uniform regulations represents a willful disregard for legal and ethical standards." *Id.*

### 1. **City of Albany – Failure to Train or Supervise**

Liberally read and applying special solicitude, plaintiff is arguing that the City of Albany was deliberately indifferent to officers' constitutional violations because it failed to train or supervise the police officers involved in the alleged constitutional violations. *See, e.g.*, *Tirado v. City of New York*, 19-CV-10377 (LAK)(SN), 2021 WL 11646299, at *9 (S.D.N.Y. Jan. 25, 2021) (explaining that "[m]unicipal liability can also be established through a municipal policymaker's failure to appropriately train, supervise, discipline, or screen municipal employees where such a failure amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact") (citation and internal quotation marks omitted). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Jackson v. Nassau Cnty.*, No. 18-CV-3007(JS)(AYS), 2024 WL 4252047, at *33 (E.D.N.Y. Sept. 20, 2024) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)); *see also Vasquez v. City of New York*, No. 20-CV-4641 (ER), 2023 WL 8551715, at *5 (S.D.N.Y. Dec. 11, 2023)

20

(quoting *Greene v. City of New York*, 742 F. App'x 532, 536 (2d Cir. 2018) (summary order) ("The Supreme Court and Second Circuit consider a § 1983 claim against a municipality to be 'at its weakest' when it relies on such an alleged failure to train or supervise.")).  "Deliberate indifference requires 'proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Tirado*, 2021 WL 11646299, at *11 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). "[A] successful *Monell* claim based on a failure to train theory must show that 'the need to act [was] so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights.'" *Id.* (quoting *Reynolds v. Giuliani*, 506 50 F.3d 183, 192 (2d Cir. 2007)).

"The Second Circuit has identified three requirements to determine whether a 'failure to train . . . constitutes deliberate indifference.'" *Jackson*, 2024 WL 4252047, at *33 (quoting *Jenkins v. City of N.Y.*, 478 F.3d 76, 94 (2d Cir. 2007)).

> The plaintiff must show: "[f]irst . . . that [the] policymaker knows to a moral certainty that her employees will confront a given situation . . . [;] Second, . . . the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."

*Id.* (quoting *Jenkins*, 478 F.3d at 94). "In the case of a failure to train, a court may draw the inference that a municipal policy exists from 'evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Tirado*, 2021 WL 11646299, at *9 (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).  Under the failure to supervise or discipline theory, a plaintiff must show that 'the municipality failed to adequately supervise or discipline its employees (thereby implicitly encouraging or ratifying their

21

unlawful conduct) . . . [and] that such a failure of supervision or discipline was tantamount to deliberate indifference.'" *Buari v. City of N.Y.*, 530 F. Supp. 3d 356, 399 (S.D.N.Y. 2021); *Jackson*, 2024 WL 4252047, at *34 (quoting *Buari*, 530 F. Supp. 2d at 399) ."In the failure to supervise context, a plaintiff must establish deliberate indifference by demonstrating 'that the need for more or better supervision . . . was obvious,' but the defendant 'made no meaningful attempt' to prevent the constitutional violation." *Tirado*, 2021 WL 11646299, at *9  (quoting *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 127 (2d Cir. 2004)); *Mosca v. City of New York*, No. 17-CV-4327, 2018 WL 6835524, at * 15 (E.D.N.Y. Dec. 26, 2018), *report & recommendation adopted in part, rejected in part on other grounds*, 2019 WL 938936, at *8-10 (S.D.N.Y. Feb. 25, 2019) ("In order to plausibly allege a pattern of similar violations, a complaint must reference comparable incidents that occurred prior to the events in question and cannot rely on events that post-date the subject act of alleged misconduct") .

As for the City of Albany, plaintiff does not identify a policy or custom of failing to train or supervise. It appears she is attempting to argue that the City of Albany failed to implement proper policies and training such that the officers would be able to perform their duties without violating individuals' constitutional rights.  "[T]he only facts [plaintiff] alleges in support of [her] conclusory allegation of a policy, custom, or practice are those underlying the alleged constitutional violation against [her].  [She] does not include any factual allegations about other incidents that might raise an inference of 'a practice so widespread that . . . supervisory authorities must have been aware of it." *Baumeister v. Erie Cnty.*, No. 23-CV-1150-LJV, 2024 WL 4362311, at *7 (W.D.N.Y. Sept. 30, 2024) (citing *Iaconvangelo v. Corr. Med. Care, Inc.*, 642 F. App'x 10, 13 (2d

22

Cir. 2015)).  "After *Twombly* and *Iqbal*, courts generally require that [plaintiffs] 'provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train.'"  *Baumeister*, 2024 WL 4362311, at *8 (quoting *Buari*, 530 F. Supp. 3d at 400 (quoting *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *22 (S.D.N.Y. Mar. 26, 2015)).

When a plaintiff seeks to assert a failure to train theory, "a plaintiff must plausibly allege a specific deficiency in the municipality's training." *Tirado*, 2021 WL 11646299, at *9 (quoting *Calderon v. City of New York*, 138 F. Supp. 3d 593, 613 (S.D.N.Y. 2015)). "Although a plaintiff cannot be expected to have and know the details of a municipality's training programs at the pleading stage, she is not relieved from her "'obligation under Iqbal to plead a facially plausible claim.'" *Id.* (quoting *Calderon*, 138 F. Supp. 3d at 613)). "[T]he Second Circuit has noted that a policy of acquiescing in or ratifying unlawful conduct "cannot be inferred from the failure of those in charge to discipline a single . . . officer for a single incident of illegality; instead, there must be more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct." *Baumeister*, 2024 WL 4362311, at *7 (quoting *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 306 (2d Cir. 2020)).

"To support a claim based on inaction, the 'custom' or 'policy' must be demonstrated by showing that the municipality's failure to supervise or properly train its police force is so severe as to constitute 'deliberate indifference' to a plaintiff's rights." *Washington v. Eaton*, No. 3:20-CV-1111(VLB), 2021 WL 3291658, at *8 (D. Conn. Aug. 2, 2021) (citing *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989)). "The plaintiff must show that the need for more or better protocols or supervision to protect against

23

constitutional violations was obvious, such that it amounts to a deliberate choice by the municipality." *Id.* (citing *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir.1995)). "'An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents.'" *Id.* (quoting *Vann*, 72 F.3d at 1049).

Plaintiff does not argue that the municipality, Sheehan, or Hawkins were "'knowingly and deliberately indifferent to the possibility that its police officers were wont' to violate the constitutional rights of arrestees." *Amnesty Am.*, 361 F.3d at 127) (quoting *Fiacco v. City of Rensselaer*, 783 F.2d 319, 326 (2d Cir. 1986)). A plaintiff "injured by a police officer's use of excessive force may establish a basis for municipal liability by alleging that the [municipality]'s policymakers were 'knowingly and deliberately indifferent to the possibility that its police officers were wont' to violate the constitutional rights of arrestees" *Amnesty Am.*, 361 F.3d at 127 (quoting *Fiacco v. City of Rensselaer*, 783 F.2d 319, 326 (2d Cir. 1986))). "[T]o proceed on a deliberate-indifference theory, a plaintiff must first establish 'that the need for more or better supervision to protect against constitutional violations was obvious.' *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (internal quotation marks omitted) (quoting *Amnesty Am.*, 361 F.3d at 127).

> But a plaintiff cannot raise a viable claim simply by asserting that deficient training caused a constitutional violation. See Simms v. City of New York, 480 F. App'x 627, 631 n.4 (2d Cir. 2012) (summary order). Instead, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 62 (quoting Bd. of Cnty. Comm'rs. v. Brown, 520 U.S. 397, 409 (1997)). "Without notice that a course of training is deficient in a particular respect," the Supreme Court has explained,

24

"decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Id.

*Baumeister*, 2024 WL 4362311, at *8.  Accordingly, it is recommended that plaintiff's failure to train and failure to supervise claim, pursuant to *Monell*, against the City of Albany be dismissed without prejudice and with an opportunity to amend.

### 2.  **Widespread Practice, Custom, or Usage**

Arguably, plaintiff is also attempting to allege that, Hawkins and Sheehan's public comments about Black Lives Matters protesters, demonstrates discriminatory animus. Plaintiff contends that "[t]heir inaction and poor leadership created conditions that escalated tensions and led to the violations" set forth in the Amended Complaint.  Am. Compl. at 11.  She similarly accuses Hawkins of making "vague and unsupported claims of a regional safety threat" which "further incited hostility toward protesters."  *Id.* It appears that plaintiff is suggesting that Sheehan and Hawkins alleged public statements about Black Lives Protesters, generally, created a de facto policy or custom of "hostility toward protestors" or somehow ratified police officers' violations of such protesters' constitutional rights.

> To plausibly allege a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware, a "[p]laintiff must allege 'that the relevant practice is so widespread as to have the force of law.' " *Kucharczyk*, 95 F. Supp. 3d at 544 (quoting Brown, 520 U.S. at 404); see *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). "[T]here must be 'sufficient instances of tolerant awareness by supervisors of abusive conduct to support an inference that they had a policy, custom or usage of acquiescence in such abuse.'" *Choudhury v. NYC Health & Hosps. Corp.*, 25 Civ. 5240 (PAE), 2026 WL 322956, at *12 (S.D.N.Y. Feb. 6, 2026) (quoting *Lucente v. County of Suffolk,* 980 F.3d 284, 298 (2d Cir. 2020)). At that point, "the unconstitutional conduct is so persistent and widespread that it can constitute a custom or usage of which a supervising policymaker must have been aware." *Id.* (quoting *Lucente*, 980 F. 3d at 298). "[T]he mere assertion . . . that a municipality has such a custom or policy is insufficient

25

in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).

*Doe v. Tripodi, et al.*, No. 22-CV-07773 (OEM) (RML), 2026 WL 1078110, at *4 (E.D.N.Y. Apr. 21, 2026). "Boilerplate statements that county employees were acting in accord with a municipal policy, with no facts to support those statements, are not sufficient to support a Monell claim." *Forrest v. Cnty. of Greene*, 676 F. Supp. 3d 69, 76 (N.D.N.Y. 2023) (internal quotation marks and citation omitted).

Plaintiff does not sufficiently allege a practice "so consistent and wide spread that, although not expressly authorized, constitutes a custom or usage of which supervising policy-maker must have been aware." *Taylor v. Henson*, No. 25-CV-4867 (JGLC), 2026 WL 915455, at *4 (S.D.N.Y. Apr. 3, 2026) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 161, 276-77 (S.D.N.Y. 2010)).  Other than her experience on April 14 and 21 and allegations of excessive force toward other protesters present there, uncited and general comments, plaintiff does not set forth a well-settled custom or practice by the municipality that caused the alleged violations of her constitutional rights.  *See*, *e.g.*, *Boddie v. City of New York*, No. 15-cv-4275, 2016 WL 1466555, at *3 (S.D.N.Y. Apr. 13, 2016) (holding that pleading only "two or three instances" of a constitutional violation falls "far short of showing a policy, custom, or usage"); *see also Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) ("[I]solated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability.").

To the extent plaintiff attempts to bring Monell liability under a theory that Sheehan or Hawkins were policy makers and that the municipality should be held liable

26

because they "rubberstamped" or "turned a blind eye" to officers' misconduct, such claim also fails. *Parson v. Campbell*, No. 5:25-CV-956 (AJB/MJK), 2025 WL 3514155, at *9 (N.D.N.Y. Dec. 8, 2025), *report and recommendation adopted*, No. 5:25-CV-956 (AJB/MJK), 2026 WL 141903 (N.D.N.Y. Jan. 20, 2026) (As an initial matter, Parson surmises that Lynch and Helms are policy makers. And, even if they were, "rubberstamp[ing]" or "turn[ing] a blind eye" to their subordinates' decision-making is not sufficient to establish either a municipal policy or the delegation of policymaking authority.") (quoting *Baity v. Kralik*, 51 F. Supp. 3d 414, 442 (S.D.N.Y. 2014)).

Accordingly, to the extent plaintiff seeks to set forth a claim against the City of Albany, pursuant to *Monell*, alleging a widespread custom, usage, or practice, it is recommended this claim be dismissed without prejudice and with a final opportunity to amend.

## F. **Sheehan and Hawkins**

As to any claims against Sheehan and Hawkins,[11] official capacity claims against these defendants are, in effect, claims against the municipality that employs them. Where, as here, the plaintiff has also named the municipality as a defendant, courts generally dismiss official-capacity claims as redundant or duplicative. *See, e.g.*, *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 498–99 (N.D.N.Y. 2017); *Booker v. Bd. of Educ., Baldwinsville Cent. Sch. Dist.*, 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002). Thus, to the extent plaintiff may seek to sue Hawkins and Sheehan in their official capacities, such

---

[11] "A claim made against an individual officer in their official capacity is essentially a claim against the governmental entity that employs them." *Guarneri v. Schenectady City Police*, No. 121CV0496LEKCFH, 2021 WL 4891548, at *2 (N.D.N.Y. Oct. 20, 2021) (citing *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.") (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).

claims must be dismissed as duplicative of the claims against the city of Albany.  As "*Monell* does not apply to . . . individuals who are sued in their individual capacity." *Jackson v. Williams*, No. 18-CV-1137, 2017 WL 1162196, at *3 (N.D.N.Y. Mar. 28, 2017).  The undersigned thus assesses whether plaintiff has stated any claims against Sheehan or Hawkins in their individual capacities.

It is well settled that section 1983 does not allow a municipality to be held liable under a theory of respondeat superior. *See, e.g.*, *Iqbal*, 556 U.S. at 676.  "[T]here is no special rule for supervisory liability" in § 1983 actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  Indeed, "it is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Sash v. United States*, 674 F. Supp. 2d 531, 542 (S.D.N.Y. 2009) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)); *see also* *Wiggins v. Griffin*, 86 F.4th 987, 996 (2d Cir. 2023).  Thus, it is insufficient to allege that a defendant supervised the state actor who allegedly committed the constitutional violation.  *See Tangreti*, 983 F.3d at 618. "'[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority.'" *Kweller v. Cnty. of Broome*, No. 3:24-CV-1328 (AJB/ML), 2025 WL 2719897, at *17 (N.D.N.Y. Sept. 24, 2025) *reconsideration denied*, No. 3:24-CV-1328 (AJB/ML), 2025 WL 3280745 (N.D.N.Y. Nov. 25, 2025) (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)).  Rather, "a plaintiff must show the defendant's personal involvement in the alleged constitutional violations." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  Said another way, a "supervisory liability claim under § 1983 cannot proceed absent allegations that the supervisor was personally involved in the alleged

28

constitutional violation through their own conduct." *Anderson v. City of Mount Vernon*, No. 23-CV-3963-NSR, 2025 WL 2773144, at *5 (S.D.N.Y. Sept. 29, 2025) (citing *Tangreti*, 983 F.3d at 618-19).

"Liability based solely on the actions of a subordinate under the watch of a superior, or solely due to a failure to supervise, without more, constitutes precisely the type of vicarious, respondeat superior liability that *Iqbal* and *Tangreti* eliminate." *Myers ex rel. Est. of Myers v. Davenport*, 1:21-CV-0922 (LEK/CFH), 2022 WL 3017367, at *4 (N.D.N.Y. July 29, 2022) (citing *Iqbal*, 566 U.S. at 676)). Here, plaintiff seeks to hold Sheehan and Hawkins' liable for the conduct of their apparent subordinates solely due to their supervisory role.[12] As plaintiff's amended complaint seeks to hold Sheehan and Hawkins responsible solely due to the alleged misconduct of their subordinates based on their alleged failure to supervise or train, plaintiff has failed to set forth a claim against Sheehan[13] and Hawkins.

Further, plaintiff contends that Hawkins' "authorized" officers covering their nametags, and she connects this claim to Hawkins' alleged "failure to ensure that officers complied with uniform regulations." Am. Compl. at 11. Yet, plaintiff does not contend that Hawkins or Sheehan, prior to the alleged use of excessive force on plaintiff on April 21, 2021, were aware that officers intentionally covered their nametags during the course of arrests in order to commit misconduct and avoid repercussions. *See id.* She presents no other incidents of intentional badge covering during arrests involving City of Albany Police Department officers; thus, she has not demonstrated that either

---

[12] Plaintiff does not claim that Sheehan or Hawkins were final policy makers. *See, e.g.*, *Rindgen v. Cnty. of Broome,* No. 3:24-CV-1325 (AJB/ML), 2025 WL 3442967, at *4 (N.D.N.Y. Dec. 1, 2025).
[13] She also does not allege or demonstrate that Sheehan had any discretion over the Police Department's training or supervision of officers.

29

defendant had knowledge but failed to take corrective action.  *See Greer v. Vill. of Scarsdale*, No. 22-CV-7322 (NSR), 2026 WL 658519, at *8 (S.D.N.Y. Mar. 9, 2026 (citing *Urquhart v. Metro. Transp. Auth.*, 975 F. Supp. 2d 320, 343 (S.D.N.Y. 2013)). She does not demonstrate how defendants created a policy or custom fostering the alleged misconduct.  *See id.*

Accordingly, it is recommended that, insofar as plaintiff attempts to set forth 1983 claims against Sheehan and Hawkins in their individual capacities, such claims be dismissed for failure to establish defendants' personal involvement in the alleged constitutional violations.  Due to plaintiff's pro se status, however, it is recommended that plaintiff be afforded one final opportunity to amend to attempt to bring section 1983 claims against Sheehan and Hawkins in their individual capacities.

## IV. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, as to the undersigned's review of plaintiff's Amended Complaint, Dkt. No. 5, pursuant to 28 U.S.C. §§ 1915, 1915A, it is hereby:

**RECOMMENDED**, that plaintiff's Fourth Amendment excessive force claim **proceed**, but to avoid piecemeal litigation, service not issue until the District Judge has reviewed this Report-Recommendation & Order, determined whether plaintiff may file a second amended complaint, and the Court reviews any such second amended complaint[14]; and it is further

---

[14] If the District Judge adopts this Report-Recommendation & Order and plaintiff files a second amended complaint, she must reallege all facts as well as her Fourth Amendment claim.  If she does not reallege the Fourth Amendment claim, it will be deemed abandoned.  Similarly, if she omits any of the facts included in the amended complaint, such facts will be deemed abandoned.  Plaintiff is not to include any

**RECOMMENDED**, that, if the District Judge adopts this Report-Recommendation & Order, plaintiff be granted thirty (30) days from the filing date of the District Judge's Order reviewing this Report-Recommendation & Order, to file a second amended complaint, and it is further

**RECOMMENDED**, that plaintiff's Fourteenth Amendment deprivation of property without due process claim be **DISMISSED** with prejudice and without opportunity to amend; and it is further

**RECOMMENDED**, that plaintiff's Fourteenth Amendment Equal Protection claim be **DISMISSED** without prejudice and with opportunity to amend; and it is further

**RECOMMENDED**, that plaintiff's First Amendment retaliatory arrest claim be **DISMISSED** without prejudice and with opportunity to amend; and it is further

**RECOMMENDED**, that plaintiff's First Amendment free speech claim be **DISMISSED** without prejudice and with opportunity to amend; and it is further

**RECOMMENDED**, that plaintiff's First Amendment right of peaceable assembly claim be **DISMISSED** without prejudice and with opportunity to amend;

**RECOMMENDED**, that plaintiff's claims for liability pursuant to *Monell* against the City of Albany be **DISMISSED** without prejudice and with opportunity to amend; and it is further

---

claims that the District Judge may dismiss with prejudice.  Any second amended complaint would supersede and replace the amended complaint in its entirety. Plaintiff may not incorporate any portion of the amended complaint by reference into the second amended complaint.  Further, plaintiff's time to file a second amended complaint would not begin to run until after the District Judge reviews this Report-Recommendation and Order and files his decision on the docket.

31

**RECOMMENDED**, that plaintiff's claims against Sheehan and Hawkins, to the extent they are brought against them in their individual capacities, be **DISMISSED** without prejudice and with opportunity to amend; and it is further

**RECOMMENDED**, that plaintiff's claims against Sheehan and Hawkins, to the extent they are brought against them in their official capacities, be **DISMISSED** with prejudice and without opportunity to amend as duplicative of her claims against the City of Albany; and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1999)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[15]

Dated: June 8, 2026
Albany, New York

_____
Paul J. Evangelista
U.S. Magistrate Judge

---

[15] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  *See* FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  *See id.* § 6(a)(1)(c).